UNITED STATES of America,
Plaintiff–Appellee,

v.

Herman GOLDFADEN, Defendant–
Appellant.

No. 91–1781.

United States Court of Appeals,
Fifth Circuit.

April 22, 1992.

---

**4.** Although this aspect of the *Penry* claim is arguably procedurally barred, we do not rest our decision on this ground.

Karl Racine, Amy Berman Jackson and Judson Starr, Venable, Baetjer, Howard & Civiletti, Washington, D.C., for defendant-appellant.

Leonard A. Senerote, Claire Whitney and Cheryl T. Seager, Asst. U.S. Attys., Marvin Collins, U.S. Atty., Dallas, Tex., William B. Lazarus, U.S. Dept. of Justice, Appellate Section, Anne S. Almy, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Herman Goldfaden appeals his sentence of three years' imprisonment for violating the Clean Water Act, 33 U.S.C. §§ 1251–1387.

## Background

In September 1990, Goldfaden and his company, Control Sewer and Pipe Cleaning Company, Inc., d/b/a Control Disposal Company, were indicted for violating the Dallas City Code, and, consequently, the Clean Water Act, by discharging hazardous and industrial waste into the Dallas sewer system without a permit. In October Goldfaden pleaded guilty to one count of a superseding indictment, discharge of industrial waste, a violation of Dallas Code Ordinance 49 and 33 U.S.C. § 1319(c)(2)(A). In return, the Government agreed to dismiss the remaining counts of the indictment and to make no recommendation as to Goldfaden's sentence. The parties also agreed on a statement of facts describing the details of Appellant's offense.

The district court accepted Appellant's plea and sentenced him as recommended by the probation office in Appellant's presentence report, although both the Government and Appellant objected to the report's calculations. The district court began with guideline section 2Q1.2(a), mishandling of hazardous and toxic substances, which provides for a base offense level of eight. U.S.S.G. § 2Q1.2(a) (1991). For the specific offense characteristic of repetitive discharges (section 2Q1.2(b)(1)(A)) and disposal without a permit (section 2Q1.2(b)(4)), the district court added ten levels (six and four respectively). The court also added two levels based on Appellant's leadership role in the offense (section 3B1.1(c)) and two levels for obstruction of justice (section 3C1.1). The court did not deduct for acceptance of responsibility, so the total offense level was twenty-two. Because Appellant had no prior criminal convictions, this offense level translated into an imprisonment range of forty-one to fifty-one

months. The statutory maximum term of imprisonment, however, is three years. 33 U.S.C. § 1319. Appellant thus received a sentence of thirty-six months.

Appellant contests his sentence on several grounds. First he argues that by recommending guideline levels, the Government breached the plea agreement. Second, he asserts that the district court relied on the wrong guideline to determine his base offense level. Third, Appellant contends that the district court erred in enhancing his sentence six levels for repetitive discharges. Fourth, he argues that the four level enhancement for disposal without a permit violates the intent of the guidelines. Fifth, he challenges the enhancement for obstruction of justice. Sixth, he contests the district court's refusal to deduct two levels for acceptance of responsibility. Finally, Appellant challenges the sentence because it varies from those of defendants convicted of similar crimes.

## Analysis

### A. Plea Agreement

■ After Goldfaden pleaded guilty, the Government submitted four memoranda to the probation office advocating the use of different guideline sections to calculate his sentence. Appellant argues, for the first time on appeal, that these suggestions violated the Government's promise to "make no recommendation" as to his sentence. Because Appellant failed to object to the Government's action in the district court, we review his claim for plain error. Fed. R.Crim.P. 52(b); *United States v. Vontsteen*, 950 F.2d 1086, 1089 (5th Cir.1992) (en banc). Plain error, as the *Vontsteen* court explained

"is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.... Alternatively stated, when a new factual or legal issue is stated for the first time on appeal, plain error occurs when our failure to consider the question results in 'manifest injustice.'"

*Id.* at 1092 (quoting *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991)). "Errors of constitutional dimension will be noticed more fully under the plain error doctrine than less serious errors." *Lopez,* 923 F.2d at 50.

▮▮ Defendants, such as Goldfaden, give up constitutional rights in reliance on promises made by prosecutors, implicating the Due Process Clause once the court accepts their pleas. *Mabry v. Johnson,* 467 U.S. 504, 507–09, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984) (citing *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). The failure of the Government to fulfill its promise, therefore, affects the fairness, integrity, and public reputation of judicial proceedings. We thus conclude that a prosecutor's breach of a plea agreement can amount to plain error. We turn, then, to examine whether the Government's action in this case violated its plea agreement with Appellant, and, if so, whether the violation constitutes plain error.

▮▮ The Government concedes that it "took a position" regarding the application of certain guidelines to Appellant's sentence calculation. It also notes that it corrected misstatements of fact in the presentence report. Both types of comments, the Government argues, are consistent with this Court's interpretation of "no recommendation" agreements.

We have stated:

> As part of a plea agreement, the Government is free to negotiate away any right it may have to recommend a sentence. However, the Government does not have a right to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court.

*United States v. Block,* 660 F.2d 1086, 1091–92 (5th Cir. Unit B Nov. 1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982). To the extent that the Government corrected factual misstatements in Appellant's PSI, its memoranda were in keeping with our precedent. But, as the Government concedes, it did more than point out factual inaccuracies—it suggested a base offense level, advocated a ten-level increase, argued for a minimum offense level of thirteen, later advanced a higher base offense level of twenty, and recommended an upward departure.

The Government urges us to distinguish comments that "suggest a specific sentence" and violate "no recommendation" agreements, from comments that "influence the severity of a sentence," but are not considered "recommendations." The Government further argues that its comments fall within the latter, allegedly permissible, category. Some circuits have adopted this analysis. *See United States v. Stemm,* 847 F.2d 636, 639–40 (10th Cir. 1988) (Government's description of defendant's culpability is not a sentence recommendation); *United States v. Miller,* 565 F.2d 1273, 1275 (3d Cir.1977) (remarks regarding defendant's cooperation are not recommendations), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). But we find it unnecessary to do so because the Government's action in this case constitutes a recommendation.

In *United States v. Hayes,* 946 F.2d 230 (3d Cir.1991), the Third Circuit, which applies the distinction, held that a memo advocating a guideline offense level indeed recommended a specific sentence and thus violated a "no recommendation" agreement similar to, but less stringent than, the one entered into between Appellant and his prosecutor. The Government's remarks here similarly violated its agreement. That its comments referred to guideline levels rather than months or years does not alter the fact that the Government suggested a term of imprisonment for Appellant. Unlike general descriptions of a defendant's culpability or cooperation, "suggestions" or "positions" on the applicability of certain guidelines, enhancements, and departures translate directly into a range of numerical figures representing lengths of prison stay. We hold, therefore, that the Government violated its plea agreement, and that this violation is plain error.

▮▮ We thus vacate Appellant's sentence and remand to the district court. On

remand, the court should determine whether the appropriate remedy is specific performance of the plea agreement or withdrawal of the plea. If specific performance is called for, Appellant must be sentenced by a different judge. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499. Although this error alone requires us to vacate Appellant's sentence, we address the other alleged errors to guide the sentencing court on remand.[1]

## B. *Choice of Guidelines*

■ The district court calculated Appellant's sentence using section 2Q1.2 of the sentencing guidelines "mishandling of hazardous or toxic substances," which provides a base offense level of eight. U.S.S.G. § 2Q1.2 (1991). Goldfaden and the Government suggested that section 2Q1.3, "mishandling of other environmental pollutants," was the appropriate base guideline.

■ The Government now contends that the district court was correct to rely on section 2Q1.2 because the court is permitted to consider a defendant's relevant conduct when selecting a base offense guideline. We disagree.

The district court's initial selection of an offense guideline is governed by section 1B1.2, which instructs the court to "[d]etermine the offense guideline section ... most applicable to the *offense of conviction (i.e.,* the offense conduct charged in the count of the indictment or information of which the defendant was convicted.)" U.S.S.G. § 1B1.2(a) (1991) (emphasis added). Contrary to the Government's assertion, the guidelines do not suggest that relevant conduct is a factor in the district court's determination of an offense guideline. Rather, they state that the court should examine relevant conduct in determining guideline range, *see id.* § 1B1.2(b), or in choosing a "base offense level where the

guideline specifies *more than one base offense level." Id.* § 1B1.3(a)(1) (emphasis added). Neither of the guidelines proposed by the parties provides for more than one base offense level. *Id.* §§ 2Q1.2 & 2Q1.3; *but cf., id.* § 2Q1.6 (providing four base offense levels from which to select for the offense of hazardous or injurious devices on federal lands). The district court, thus, should have relied solely on Appellant's offense of conviction to determine the base offense guideline to be used in its calculations.

Appellant's offense of conviction (count seven of his indictment) was for discharge of industrial waste in contravention of the Dallas City Code, a violation of 33 U.S.C. § 1319(c)(2)(A). The most applicable guideline, therefore, is not section 2Q1.2, which pertains to disposal of hazardous or toxic waste, but section 2Q1.3, which pertains to mishandling of "other environmental pollutants."[2]

## C. *Enhancement for Repetitive Discharges*

The district court increased Appellant's offense level for repetitive discharges in accordance with section 2Q1.2(b)(1)(A). That section instructs the court to add six levels "[i]f the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment." U.S.S.G. § 2Q1.2(b)(1)(A).

In support of the enhancement, the court relied on the testimony of Agent Fred Burnside of the Environmental Protection Agency. Burnside described his own observation of one illegal dumping (at the scene of Goldfaden's arrest) and summarized interviews he had conducted with twelve Control Disposal drivers. Several of the drivers informed Burnside that it was accepted company policy to illegally dump both hazardous and industrial waste

---

1. Appellant failed to object in the district court to three of the issues, the court's reliance on a co-defendant's PSI, the enhancement for discharge without a permit, and the enhancement for obstruction of justice. Our examination of these allegations, therefore, is limited to a search for plain error.

2. Though we find that the district court should have employed section 2Q1.3, we discuss the enhancements in terms of section 2Q1.2 (as did the district court) for consistency. The text of the relevant enhancement provisions of both guidelines is the same.

into the Dallas sewer system; others informed him that Goldfaden had specifically instructed them to dump waste water into the sewers. The court did not credit the testimony offered by Goldfaden to the contrary, because it was inconsistent and conflicted with Burnside's testimony and information contained in the presentence report of one of Appellant's co-defendants, Steve Charo, a former Control Disposal employee.

Appellant asserts that the district court's reliance on Burnside's hearsay testimony violated his Sixth Amendment confrontation right. We are unpersuaded by Appellant's argument. Generally, sentencing proceedings do not offer criminal defendants the same procedural safeguards as trials. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) ("Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all."); *Williams v. New York*, 337 U.S. 241, 250, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949) (Sentencing courts routinely rely on information that is inadmissible at trial.). Accordingly, sentencing courts may rely on reliable information, including hearsay, in imposing sentences. *Williams v. Oklahoma*, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959). Indeed, the Federal Rules of Evidence expressly exclude sentencing hearings from the hearsay rules. Fed.R.Evid. 1101(d)(3). Though the circuit courts at times have been split over the issue,[3] we have held that the introduction of hearsay does not violate the "severely restricted" confrontation rights of defendants at sentencing. *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir.), *cert. denied, ——*

U.S. ——, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990).

Appellant next contends that the court relied on Charo's PSI without giving Appellant an opportunity to refute its allegations, thereby denying him due process. The record is unclear as to whether the district court used Charo's PSI as the basis of the enhancement or simply to support the credibility of Agent Burnside's testimony. We, therefore, take this opportunity to note that when the court intends to rely on information not contained in a defendant's PSI, Criminal Rule of Procedure 32 requires that "defense counsel must be given an opportunity to address the court on the issue." *United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989).

Finally, Appellant argues that without a finding of actual environmental contamination, the district court's increase for repetitive discharge was improper. Appellant bases his contention on the commentary to the guideline that states:

> Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release, or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.

U.S.S.G. 2Q1.2, comment. (n.5).

At least three circuit courts, ours included, have discussed Appellant's theory that

---

**3.** *Compare United States v. Silverman*, 945 F.2d 1337 (6th Cir.) (withdrawn), *vacated, reh'g granted*, 1991 WL 179608, 1991 U.S.App. LEXIS 28543 (6th Cir. Dec. 4, 1991) *and United States v. Wise*, 923 F.2d 86, 87 (8th Cir.) (hearsay evidence violates Confrontation Clause unless declarant is unavailable), *vacated, reh'g granted*, 1991 WL 665, 1991 U.S.App. LEXIS 4326 (8th Cir. Mar. 15, 1991) *with United States v. Kikumura*, 918 F.2d 1084, 1102 (3d Cir.1990) (normally, reliable hearsay permissible at sentenc-

ing); *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir.1990) (sentencing court may rely on testimony from another trial if defendant is afforded an opportunity to rebut evidence or cast doubt upon its reliability) *and United States v. Beaulieu*, 893 F.2d 1177, 1180–81 (10th Cir.) (defendant does not have absolute right to confront witnesses whose information is available to sentencing court), *cert. denied, ——* U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

subsection (b)(1) requires the Government to prove environmental contamination. *See United States v. Irby,* 944 F.2d 902 (table) (4th Cir.1991) (unpublished); *United States v. Sellers,* 926 F.2d 410 (5th Cir.1991); *United States v. Bogas,* 920 F.2d 363 (6th Cir.1990). Because evidence was introduced from which the district court could either find or infer environmental contamination in each of these cases, however, the courts did not need to decide whether the commentary adds an additional requirement—proof of environmental contamination—to the guideline. *See Irby,* 1991 WL 179110 at *1, 1991 U.S.App. LEXIS 21687 at *1; *Sellers,* 926 F.2d at 418; *Bogas,* 920 F.2d at 368. We do not believe that it does. Rather, we interpret the commentary to explain that subsection (b)(1) takes environmental contamination as a given, but allows for upward or downward departures depending on the potency, size, or duration of the contamination. The absence of proof of actual environmental contamination, in this case, therefore, does not affect the propriety of the district court's enhancement for repetitive discharges.

### D. *Discharge Without a Permit*

■ The district court enhanced Appellant's offense level by four for discharge without a permit as required by section 2Q1.2(b)(4). Appellant argues that this constitutes a double penalty because his conviction involved discharge without a permit.

The district court followed section 2Q1.2(b)(4) to the letter when it added four levels because the "offense involved a discharge without a permit." U.S.S.G. § 2Q1.2(b)(4). That the sentencing commission is considering an amendment to the subsection [4] does not alter our conclusion that the district court properly applied the guideline as now written.

### E. *Obstruction of Justice*

The district court based a two-level enhancement for obstruction of justice pursu-

ant to section 3C1.1 on three different grounds: Appellant's concealment of records in relation to count one of his superseding indictment, his perjurious testimony about the amount of waste water discharged, and his perjurious testimony about repetitive discharges. Appellant argues that each of these grounds is flawed.

■ We have reviewed the sentencing transcript, and find that the perjury ruling is fairly supported. Section 3C1.1 provides for an enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Though the court may not penalize a defendant for denying his guilt as an exercise of his constitutional rights, enhancement based on perjury is permissible. *Id.,* comment. (n. 1), (n. 3(f)). Because we find that the perjury ruling alone supports the enhancement, we decline to address whether acts committed in furtherance of count one of the indictment could constitute obstruction of justice in "the instant offense."

### F. *Acceptance of Responsibility*

■ The district court declined to reduce Appellant's offense level for acceptance of responsibility. The guidelines suggest that "[c]onduct resulting in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment. (n. 4). As we stated earlier, the district court's finding of perjury is sound. The court's denial of a reduction for acceptance of responsibility in light of the perjured testimony similarly is well founded.

### G. *Disparity*

■ Appellant's final argument is that the district court failed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

---

**4.** 57 Fed.Reg. 97 (1992) (amendment to U.S.S.G. § 2Q1.2(b)(4)) (proposed Jan. 2, 1992).

Though Appellant has shown that his sentence differs from those of defendants convicted of similar crimes, he fails to convince us that these disparities are unwarranted. The above noted error aside, the district court's calculations were in keeping with the guidelines. Absent a violation in the law, we will uphold the district court's refusal to depart from the guidelines. As we have explained before, "a district court has no duty to consider the sentences imposed on other defendants." *United States v. Pigno*, 922 F.2d 1162, 1169 n. 9 (5th Cir. 1991).

### Conclusion

Because the Government violated its plea agreement, we VACATE Appellant's sentence and REMAND for disposition consistent with this opinion.