UNITED STATES of America, Plaintiff,

v.

Roberta L. DAVISON, Defendant.

No. CR–92–0211–WFN.

United States District Court,
E.D. Washington.

May 27, 1993.

Asst. U.S. Atty. Robert A. Ellis, Yakima, WA, for plaintiff.

Timothy D. Trageser, Spokane, WA, for defendant.

## MEMORANDUM OF DECISION

WM. FREMMING NIELSEN, District Judge.

The court issues this Memorandum of Decision with the hope that it will provide a relatively concise, coherent, and convenient summary of the court's factual determinations, analysis, and legal conclusions with respect to the sentencing of defendant.

## I. BACKGROUND

Defendant was charged in a two-count indictment on July 14, 1992. Count 1 charged:

During the time intervening between on or about the 28th day of May, 1992, and the 2nd day of June, 1992, in the Eastern District of Washington, the Defendant, ROBERTA L. DAVISON, with intent that another person engage in conduct constituting a felony that has [as] an element the use of physical force against the person of another in violation of the laws of the United States, did solicit, command, induce and endeavor to persuade that person to engage in such conduct, that is, tampering

with a witness, in violation of Title 18, United States Code, Section 1512; all in violation of Title 18, United States Code, Section 373.

Count 2 charged:

That on or about the 13th day of May, 1992, in the Eastern District of Washington, the Defendant, ROBERTA L. DAVISON did intentionally use physical force against Billie Jo Antelope with the intent to cause or induce Billie Jo Antelope to withhold testimony from proceedings before the United States District Court for the District of Idaho; all in violation of Title 18, United States Code, Section 1512(b)(2)(A).

During the course of the pretrial proceedings, counsel informed the court on several occasions that it appeared that plea negotiations would produce a guilty plea. The court set change of plea hearings for January 6, January 11, and January 28, 1993. Plea negotiations were ultimately unsuccessful and jury trial commenced on February 1, 1993.

The government produced evidence at trial to show that at the time of the events alleged in the indictment, defendant's brother, William Davison, was charged with murder and awaiting trial in the United States District Court for the District of Idaho and that Billie Jo Antelope was to be a witness in William Davison's trial. Evidence was also introduced to show that defendant assaulted Antelope and negotiated with Ben Fraire to kill Antelope for a price ranging in "six figures."

At the close of evidence the court instructed the jury with respect to the elements of Count 1 as follows:

## INSTRUCTION NO. 8

In order for the defendant to be found guilty of the crime charged in Count 1 of the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant solicited, commanded, induced or otherwise tried to persuade another person to commit a crime that has as an element the use of physical force against another person;

Second, the defendant intended that the person solicited would commit the crime of witness tampering through the use of physical force; and

Third, the defendant was not entrapped.

The jury was instructed as to the elements of Count 2:

## INSTRUCTION NO. 14

In order for the defendant to be found guilty of the crime charged in Count 2 of the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly used physical force, threats, or intimidation against a witness in an official proceeding; and

Second, that the defendant did so intending to cause the witness to withhold or alter her testimony.

The court also instructed the jury with respect to abandonment as that defense would apply to Count 1:

## INSTRUCTION NO. 10

The defendant is not guilty of the crime charged in Count 1, if under circumstances showing a voluntary and complete abandonment of criminal intent, the defendant prevented the commission of the crime solicited. Abandonment is not "voluntary and complete" if it is motivated in whole or in part by a decision to postpone the commission of the crime until another time. Abandonment must be established by a preponderance of the evidence.

On February 6, 1993 the jury returned a verdict of guilty on both counts.

The Presentence Investigation Report grouped the two counts and using § 2A1.5 (Conspiracy or Solicitation to Commit Murder) of the Sentencing Guidelines computed a base offense level of 28. Four levels were added under § 2A1.5(b)(1) because the offense involved the offer or receipt of pecuniary value. The offense level was then reduced by three levels under § 2X1.1(b)(3)(A) because the offense was a solicitation. An adjusted offense level of 29 and Criminal History Category I based on one criminal

history point yield a sentencing range of 87–108 months.

At the sentencing hearing on April 30, 1993, the court expressed its concern that the wrong guideline had been used to compute the offense level. The court informed counsel that it appeared that it was not appropriate to use the guideline for solicitation to commit murder when that was not the crime of conviction as stated in the indictment and defined in the instructions to the jury. The court's analysis was that defendant was convicted of solicitation to commit witness tampering which is a form of obstruction of justice and therefore § 2J1.2 was the appropriate guideline to use to set the offense level. The court adjourned the hearing to allow counsel time to respond to the court's preliminary analysis. The government submitted a sentencing memorandum in which it argued that the Presentence Investigation Report contained the correct analysis. As might be expected, the defense indicated agreement with the court's initial analysis.

## II. DISCUSSION

### 1. Selecting the Appropriate Guideline.

Section 1B1.2(a) of the Sentencing Guidelines directs the court to apply the guideline "most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." The conduct charged in Count 1 of the indictment was solicitation to commit a felony which has as an element the use of physical force, i.e., witness tampering. The indictment is insufficient to conclude defendant was convicted of solicitation to commit murder, murder for hire, or solicitation to commit witness tampering by having a witness killed. "Generally, the failure of an indictment to detail each element of the charged offense constitutes a fatal defect." *United States v. James*, 980 F.2d 1314, 1316 (9th Cir.1992). Nowhere in the indictment is there a suggestion of the element that defendant solicited the killing of another person. In *Givens v. Housewright*, 786 F.2d 1378 (9th Cir.1986), the court held that a state indictment was insufficient to support a conviction for murder by torture even though the indictment referred to the

statute which included murder by torture and a jury instruction was given with respect to the elements of murder by torture. Here the jury was not instructed concerning elements of solicitation to commit murder.

 Because the indictment is insufficient to state a charge of solicitation to commit murder, that cannot be the crime of conviction. Regardless of what the government proved at trial, it is an immutable fact the defendant was not charged with nor convicted of a solicitation to commit murder. The substantive offense solicited was witness tampering through the use of physical force. Witness tampering is defined in the United States Code, Title 18, Chapter 73 (Obstruction of Justice). The guideline dealing with obstruction of justice, i.e., § 2J1.2, is the appropriate guideline to use in accordance with § 2X1.1.

The government argues that the guidelines both permit and require consideration of the offense conduct in determining the appropriate guideline. In support, the government cites §§ 1A4(a) and 1B1.3 of the Guidelines. Section 1A4(a), however, merely discusses the Sentencing Commission's policy of attempting to combine a charge offense system and a real offense system. In fact a specific example given by the Commission is that of a bank robber who might have used a gun, frightened bystanders, taken money, injured a teller, raced away, and damaged property during his escape. All these factors are included in various subsections of § 2B3.1 (Robbery). According to the government's reasoning, the government could charge someone only with bank robbery and sentence them under § 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder), rather than using the offense characteristics in § 2B3.1. That obviously is not the intent of the Guidelines.

Relevant conduct is to be considered in determining the offense level and guideline range under § 1B1.3. However, § 1B1.2(b) instructs the court to apply § 1B1.3 *only* after determining the appropriate offense guideline. This analysis is supported by *United States v. Goldfaden*, 959 F.2d 1324 (5th Cir.1992). *Goldfaden* held that a defen-

dant indicted for discharge of industrial waste could not be sentenced under the guideline for discharge of toxic waste. The court specifically held that the sentencing court is not permitted to consider a defendant's relevant conduct when selecting a base offense guideline. *Id.* at 1329. "Contrary to the government's assertion, the Guidelines do not suggest that relevant conduct is a factor in the district court's determination of an offense guideline." *Id.* The court must rely solely on defendant's "offense of conviction to determine the base offense guideline to be used in its calculations." *Id.*

The government attempts to distinguish *Goldfaden* by arguing that the government could have chosen to charge defendant with the discharge of toxic waste rather than the discharge of industrial waste but did not choose to do so. Here, however, the government could have charged defendant with solicitation to commit murder in violation of 18 U.S.C. § 1111, or solicitation to kill or attempt to kill another person to prevent testimony in violation of 18 U.S.C. § 1512(a). Instead, the government chose to charge defendant with solicitation to commit a crime of violence, but did not include the element of killing another person. The government cannot at this late date change the crime with which the defendant was charged and of which the defendant was convicted.

The cases cited by the government do not require a contrary result. *United States v. Turner,* 898 F.2d 705 (9th Cir.) *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990), involved a defendant convicted of a drug crime who objected to consideration of relevant conduct in determining the offense level. *Turner,* in fact, supports the court's analysis in this case. The Ninth Circuit found that determining the applicable offense level is basically a two-step process: "First, the court applies the offense guideline section in Chapter 2 most applicable to the offense of conviction.... Second, the court determines the applicable guideline range (or offense level) in accordance with the relevant conduct section, § 1B1.3." 898 F.2d at 710, n. 3. In *United States v. Bos,* 917 F.2d 1178 (9th Cir.1990), defendant entered a guilty plea and stipulated to a more serious offense

than charged in the indictment. Section 1B1.2(a) specifically provides for using the guideline applicable to a stipulated offense in the context of a plea agreement. *United States v. Byrd,* 954 F.2d 586 (9th Cir.1992) involved a defendant pleading guilty to conspiring to interfere with federally protected activities. The guideline applicable to the offense, § 2H1.3, specifies more than one base offense level, as does § 2D1.1(a)(3), which was the applicable guideline in *Turner.* The court correctly considered offense conduct under §§ 1B1.2(b) and 1B1.3. The guideline applicable to solicitation, § 2X1.1, does not contain multiple base offense levels but merely instructs how to determine which guideline to use to calculate the base offense level and provides for adjustments after using the appropriate guideline. Application Note 2 of § 2X1.1 instructs the court to use the base offense level for the substantive offense, i.e., the offense of conviction.

The government cites *United States v. Cambra,* 933 F.2d 752 (9th Cir.1991) for the proposition that the statutory index in Appendix A requires the use of § 2A1.5. In *Cambra,* the defendant entered a guilty plea to counts specifically charging him with intent to defraud or mislead. The sentencing court faced a choice of offense guidelines according to the appendix and properly used § 2F1.1 (Fraud and Deceit). The fact that the statutory index in Appendix A references several guidelines for solicitation does not require the use of the guideline for solicitation to commit murder. The introduction to the appendix states: "If more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the nature of the offense conduct *charged in the count of which the defendant was convicted.*" The *charged* conduct of which the defendant was convicted was solicitation to commit witness tampering through the use of physical force. Offense guidelines applicable to murder are irrelevant.

Finally, the government argues that using 2J1.2 would be anomalous because the sentencing range for murder for hire would be considerably less than for a simple assault. Adopting the government's position would be no less anomalous. The crime of conviction

in Count 2 was witness tampering through the use of physical force. The crime of conviction in Count 1 was solicitation to witness tamper through the use of physical force. The analysis suggested by the government and contained in the Presentence Investigation Report would result in a sentence of nearly four times greater for soliciting a crime than for committing the same crime.[1] The anomaly to which the government objects arises from charging decisions, not from application of the Guidelines.

The court therefore concludes that proper application of the Guidelines require the use of 2X1.1 for Count 1 and that § 2X1.1 leads the court to § 2J1.2.

## 2. Computing the Sentence.

■ Section 3D1.2(b) instructs the court to group into a single group counts which involve transactions connected by a common criminal objective or constituting part of a common scheme or plan. Counts 1 and 2 involve the same victim and have the same criminal objective, i.e., preventing Billie Jo Antelope from providing testimony in the William Davison trial. Under 3D1.3(a) the offense level applicable to a single group is the highest level of the counts within that group.

For Count 1, § 2X1.1 refers the court to § 2J1.2. The base offense level is 12 and under § 2J1.2(b)(1), eight levels are added because of the threat of physical injury to a person. Under § 2X1.1(b)(3)(A), the level is decreased by three levels because the crime

was a solicitation. For Count 1, the adjusted offense level is thus 17.

For Count 2, the court refers directly to § 2J1.2. A base offense level of 12 with an additional 8 levels because a physical injury was involved results in an adjusted offense level of 20. Because this is higher than for Count 1, 20 is the final adjusted offense level for the crimes of which the defendant was convicted.[2] A Criminal History Category of 1 results in a sentencing range of 33–41 months.

## 3. Alternative Options.

Even if the court's analysis were incorrect, the court believes that the sentence imposed is appropriate in the circumstances. If a higher base level resulted in a significantly higher sentencing range, the court would be inclined to depart downward given the special and unique circumstances in this case. Although the jury obviously reached the conclusion that defendant had not abandoned her plan, the entire time of the offense conduct encompassed by both counts was relatively short. Defendant acted on behalf of her brother. The court concludes that William Davison and others were the "prime movers" in the attempt to interfere with Antelope's testimony and that defendant was more of a go-between than an instigator. The court also takes note of defendant's attitude and demeanor throughout the proceedings. These considerations might be insufficient to justify a downward adjustment of the

---

1. The government states that the adjusted offense level for Count 1 under 2J1.2 would be 12 because no increase would be permitted under 2J1.2(b)(1) as no physical injury occurred and no direct threat was made. Application note 2 to § 2X1.1, however, instructs the court to apply specific offense characteristics that are "determined to have been specifically intended or actually occurred." The indictment charged defendant with intending use of physical force. An eight level increase is appropriate.

 If § 2A1.5 were the correct guideline, a three level reduction under 2X1.1(b)(3)(A) would not apply because 2A1.5 already takes account of the fact of solicitation. The adjusted offense level would thus be 32, with a sentencing range of 121–151 months.

2. Section 2J1.2(c)(1) suggests that § 2X3.1 (Accessory After the Fact) should be applied. Application of that guideline would result in a base

offense level of 30, the maximum permitted under the guideline. The court discusses *infra* the likelihood of departure if § 2A1.5 were the proper guideline. The court would be no less inclined to depart downward if § 2X3.1 were used than if § 2A1.5 controlled the base offense level. In any event, there would likely be some adjustments to the base offense level. Moreover, the application notes and background statements following § 2J1.2 note that obstruction of justice may include conduct ranging from a mere threat to acts of extreme violence. The specific offense characteristics reflect the more serious forms of obstruction. Considering the entire offense conduct in determining the offense level within the guideline, the court concludes that applying § 2X3.1 would be inappropriate.

offense level for role in the offense or acceptance of responsibility and individually they may not provide a basis for departure. However, in § 1A4(b) (Departures) the Sentencing Commission states:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.... [Except for several specifically listed exceptions,] the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

The court concludes that the unique circumstances of this case take it outside the "heartland" of cases intended to be covered by the Guidelines. This would justify a downward departure from the sentencing range calculated in the report and urged by the government. *Cf., e.g., United States v. Chotas,* 968 F.2d 1193, 1195 (11th Cir.1992) (circumstances varying only in degree from that contained in guideline may remove case from "heartland"); *United States v. Collazo,* 798 F.Supp. 513, 521 (N.D.Ind.1992) (unique circumstances, though individually insufficient to support departure, may remove case from "heartland").

Nothing in the court's analysis or preceding discussion is intended to downplay the seriousness of the conduct charged in the indictment or proven at trial. As the court stated during the sentencing hearing, defendant's conduct cannot be tolerated by society, even considering the atypical nature of this case. The court, therefore, does not believe that a downward departure from the range as calculated by the court is appropriate and would give serious consideration to an upward departure if the sentencing range were lower than the court's analysis indicates. Given the duration and seriousness of the offenses, defendant's role in them, and defendant's failure to fully accept responsibility for her conduct, the sentence imposed best meets the interests of justice.

## II. CONCLUSION

Based upon the foregoing factual findings and legal conclusions, the court has sentenced defendant to 40 months imprisonment to be followed by 2 years of supervised release. A $50 special assessment is imposed on each count for a total of $100. Any fine is waived based on defendant's inability to pay.