68 F.3d 462
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John PIZZUTO, Defendant-Appellant,
and
PAR INDUSTRIAL CORPORATION, Defendant.
 No. 94-5433.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 20, 1995.
Decided: October 18, 1995.
 
 Arthur T. Ciccarello, Ciccarello, Del Giudice & Lafon, Charleston, WV, for Appellant. Lois J. Schiffer, Assistant Attorney General, Albert M. Ferlo, Jr., United States Department of Justice, Washington, DC; Rebecca A. Betts, United States Attorney, Michael O. Callaghan, Assistant United States Attorney, Charleston, WV; Martin Harrell, Associate Regional Counsel, United States Environmental Protection Agency, Philadelphia, PA, for Appellee.
 Before ERVIN, Chief Judge, and WILKINSON and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John Pizzuto appeals the 18-month sentence imposed on him following his guilty plea to failure to report the presence of PCBs[1] in electrical transformers stored at Par Industrial Park, a facility he owned (Count 1), failure properly to mark the storage areas and containers for PCBs (Count 2), and unlawful storage of PCBs in an area which lacked impervious flooring and continuous curbing to control spills (Count 3), in violation of 15 U.S.C.A. Secs. 2614(1), 2615(b) (West Supp.1995), 18 U.S.C. Sec. 2 (1988). Pizzuto contends that the district court erred in considering conduct outside the offenses to which he pled guilty to enhance his sentence for repetitive discharge of a hazardous substance. United States Sentencing Commission, Guidelines Manual Sec. 2Q1.2(b)(1)(A) (Nov.1993). We affirm.
 
 
 2
 Between 1990 and 1992, Pizzuto had over thirty electrical transformers stored in a building at Par Industrial Park. Most of these contained oil mixed with PCBs. A smaller number contained mineral oil only. The EPA made periodic inspections of the facilities at Par Industrial Park. At some point, the EPA received information that certain transformers containing PCBs had been disposed of improperly. Investigators interviewed two employees who said they had worked on weekends and evenings at Pizzuto's direction to drain and store the oil from four or five PCB transformers. They had dismantled the transformers, had added the scrap steel to the pile of scrap metal for sale, and had then salvaged the copper contained in the coils by burning the coils. They also reported that the first transformer they dismantled was damaged while being removed from a five-story building at Par, and that the damaged transformer leaked oil containing PCBs into the ground during its removal from the building.
 
 
 3
 A search was conducted at Par on June 10, 1992, as part of a joint Federal Bureau of Investigation (FBI) and Environmental Protection Agency (EPA) investigation. Four transformers listed on the EPA inventory for 1990 were missing. Pizzuto produced records for Par Industrial Corporation which showed that the missing transformers had been sold to Tomas Rodriguez of Laredo, Texas, in the fall of 1990. However, efforts to contact this man revealed that Tomas Rodriguez, Sr., had once bought and resold transformers, but had died years before, and that his business went bankrupt in the mid-1980's while being run by his son, Tomas Rodriguez, Jr. The younger Rodriguez had never bought transformers.
 
 
 4
 In October 1993, Pizzuto was charged in a five-count indictment. He pled guilty to failure to notify the fire department of the presence of PCB containing transformers at Par, to failure to mark properly containers, storage areas, and transformers in which fluids containing PCBs were stored, and to storage of PCBs in a building which did not have impervious flooring and continuous curbing to control spills. The remaining two counts were dismissed; they charged Pizzuto with failure to notify the appropriate federal agency of a hazardous substance release and with making a false statement in reporting that four PCB transformers were sold to Tomas Rodriguez.
 
 
 5
 The probation officer grouped all three counts and recommended a 6-level enhancement for an offense involving an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous substance. USSG Sec. 2Q1.2(b)(1)(A). Pizzuto objected to the enhancement, denying that any release occurred and arguing that such conduct was not to be considered in any case because it was not part of the offenses to which he had pled guilty.
 
 
 6
 The district court conducted a lengthy sentencing proceeding. At the second hearing, the court heard evidence from one of the employees involved in dismantling the four transformers,[2] the Federal Bureau of Investigation agent who interviewed the employees, and an EPA environmental scientist who testified that burning the coils from the transformers and the sale of scrap steel from the transformers would release PCBs into the environment.
 
 
 7
 Pizzuto testified that the employees had dismantled four transformers containing only mineral oil and insisted that he had sold the four missing transformers containing PCB oil to Tomas Rodriguez. However, he did not know Rodriguez's address or phone number. He testified that the transformer removed from the five-story building had been allowed to drain for six months before it was moved, making a leak impossible. The crane operator who had removed the transformer from the five-story building testified that no damage or leak had occurred, and a businessman who occupied an office at Par facing the five-story building testified that he watched the removal of the transformer and saw no damage or leak.
 
 
 8
 The district court then heard extensive argument concerning whether the disposal of four PCB transformers and any resulting release of PCBs would be relevant conduct under guideline section 1B1.3. Finally, the court made the following factual findings: that four PCB transformers were dismantled and removed from Par at Pizzuto's direction; that the first PCB transformer to be dismantled was damaged while being taken from a five-story building, resulting in a leak of PCBs into the ground; that the sale of metal scraps from the dismantled transformers which had a film of PCB oil on them and the burning of coils from the transformers each caused a release of PCBs into the environment.
 
 
 9
 The court found that these acts caused a repetitive discharge of PCBs and that these acts and the improper marking and storing of the PCB oil drained from the transformers were part of a common scheme or plan. The court also found that the draining of oil from the PCB transformers, the improper storage of the oil, and the dis mantling of the transformers, were events which were "inextricably linked." The court found that, consequently, the dismantling of the transformers occurred "during the commission of the offenses to which the defendant has pled guilty in counts two and three relating to improper storage and failure to mark." Therefore, the court found that the repetitive discharge was relevant conduct and that the 6-level increase under guideline section 2Q1.2(b)(1)(A) was appropriate.
 
 
 10
 Pizzuto argues on appeal that the district court could not consider relevant conduct charged in Count Four, which was dismissed, to find that an enhancement for repetitive discharge was necessary. He relies on United States v. Goldfaden, 959 F.2d 1324, 1329 (5th Cir.1992). However, Goldfaden holds only that the offense of conviction, not relevant conduct, is used to determine the applicable guideline. See USSG Sec. 1B1.2. Once the applicable guideline is known, relevant conduct is used to determine which specific offense characteristics apply. USSG Sec. 1B1.3(a). This Court has held that conduct charged in dismissed counts may be considered in the sentence calculation if it qualifies as relevant conduct under section 1B1.3. United States v. Williams, 880 F.2d 804, 805 (4th Cir.1989). Pizzuto's argument is thus without merit.
 
 
 11
 We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 "PCBs" are polychlorinated biphenyls, which may be present in fluids contained in electrical transformers to retard or prevent combustion
 
 
 [2]
 The other had since died in an industrial accident at Par Industrial Park