**UNITED STATES of America,
Plaintiff,**

v.

**Anthony George COOK, Defendant.**

**No. Civ.A. 2:01–0143.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 7, 2001.

Larry R. Ellis, R. Booth Goodwin II, Office of the United States Attorney, Charleston, West Virginia, for the United States.

Brian R. Kornbrath, Office of the Federal Public Defender, Charleston, West Virginia, for defendant.

### *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is Defendant's motion for specific performance of the plea agreement

and for recusal of the Court based on the Government's breach. The Court **DENIES** the motion.

## I. FACTUAL BACKGROUND

On June 5, 2001 a grand jury returned a two-count indictment against Defendant Anthony George Cook. Count One charged Defendant with sending a threatening communication by United States mail in violation of 18 U.S.C. § 876. Count Two contained a similar charge.

Defendant was arrested on May 23, 2001 in the Eastern District of North Carolina. He waived his identity hearing and requested a preliminary examination be held in the Southern District of West Virginia. Accordingly, the Court ordered Defendant detained and transported to this District.

Trial was scheduled for July 24 before the undersigned. On July 9, however, Defendant and the Government reached a plea agreement. Defendant agreed to plead guilty to Count One. The Government undertook a number of corresponding obligations, including those contained in paragraph nine:

> 9. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises, and *will make no recommendation, as to a specific sentence.* However, the United States reserves the right to:
>
> (e) *Respond to statements made to the Court by or on behalf of Mr. Cook;*

(Plea agmt. ¶ 9 (emphasis added)). On July 16, 2001 the parties and counsel appeared for the plea hearing. Pursuant to the agreement, Defendant pled guilty to Count One. Consistent with its longstanding practice, the Court only conditionally accepted the plea agreement, pending review of the presentence report (PSR) and final disposition. Disposition was scheduled for October 1, 2001.

Following the PSR's circulation, Defendant was made aware the Court might consider an upward departure.[1] At disposition, however, Defendant professed a lack of notice with respect to certain components of the departure rationale under consideration by the Court. Pursuant to *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the Court adjourned the proceedings and rescheduled disposition for October 26.

On October 23, Defendant filed a "Memorandum in Aid of Sentencing." The Memorandum contained the following assertion:

> Defendant outlines ... an analysis as to why *the only appropriate basis* for an upward departure in this case should stem from *Dismissed and Uncharged Conduct* under § 5K2.21. The Defendant further argues why a departure should [be] limited to no more than two or three offense levels.

> .    .    .    .    .

> An upward departure in this case of no more than two or three levels might be appropriate under *Bellamy* and *Adelman*. However, a departure beyond these suggested ranges *is not justified.* Neither the facts of defendant's case, *nor a legal analysis under the Guidelines* and *Koon*, support such an increased sentence.

> .    .    .    .    .

> *Dismissed and Uncharged Conduct.*

---

1. Specifically, the PSR recommended an upward departure under U.S.S.G. § 5K2.21,

Any further increase would be unreasonable.

(Memorandum at 1, 6 and 11 (emphasis added)).

On October 25, the Government responded to Defendant's Memorandum. The following half dozen sentences appeared in its eleven-page brief:

Once the Court has determined to consider the letters sent to Jacqueline Sims in Virginia, another guideline analogy is appropriate. The letters to Sims were extortionate. They demanded that she resign her job at Augusta Medical Center or face the prospect of having her children harmed. Such an extortionate threat is covered by USSG § 2B3.2. The base offense level there is 18, with a 2–level increase for a threat of death under § 2B3.2(b)(1). Moreover, since the threat demanded that she quit her job as a nursing supervisor at a hospital, the "amount demanded" under § 2B3.2(b)(2) might have justified another 2 or 3 level increase.

(Resp. at 9).

On the day of the rescheduled disposition, Defendant filed the instant motion based on the above-quoted excerpt. He alleged:

[O]ne aspect of the government's response is extremely troubling and violates the express terms of the plea agreement. In section VII of the government's response, for the first time, a new and independent legal basis is advocated as a specific ground for an upward departure. It is the government's claim that an upward departure should be based on an extortionate threat analysis under U.S.S.G. § 2B3.2. This legal basis has never before been raised by the parties; the probation office; or the Court. More important, the government suggests as an upward departure the use of very specific offense level and

two independent enhancements.... The specific recommendation for an upward departure made by the government ... calls for a total offense level of at least 23—an offense level that is *thirteen levels* higher than the offense level which the defendant presently faces.

(Def.'s Resp. at 2). Defendant asserts the Government's response violates paragraph nine of the plea agreement, namely the Government's obligation to "make no recommendation ... as to a specific sentence." (Plea Agmt. ¶ 9).

On October 26, the parties appeared for sentencing and briefly argued Defendant's motion. At that time, and without finding a breach, the Court gave Defendant the opportunity to withdraw his guilty plea. He chose to remain bound by the agreement. He persisted in his request for specific performance and recusal.

The Court again adjourned the hearing to permit briefing of the new issues. On October 30, the Court entered a Memorandum Opinion resetting disposition for November 7. The Memorandum Opinion also placed the parties on notice pursuant to *Burns* that the Court was considering Sections 5K2.21 and 5K2.8 as possible grounds for departure.

## II. DISCUSSION

██ The Government has an obligation, rooted in due process, to adhere to the terms of its plea agreements with criminal defendants. Indeed, our Court of Appeals has observed, "a government that lives up to its commitments is the essence of liberty under law." *United States v. Peglera*, 33 F.3d 412, 414 (4th Cir.1994). To that end, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also United States v. Beltran–Ortiz,* 91 F.3d 665, 668 (4th Cir.1996). As observed by the Court of Appeals in *Peglera:*

> It is well-established that the interpretation of plea agreements is rooted in contract law, and that "each party should receive the benefit of its bargain." *United States v. Ringling,* 988 F.2d 504, 506 (4th Cir.1993). A central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself. Accordingly, in enforcing plea agreements, the government is held only to those promises that it actually made to the defendant. *See United States v. Fentress,* 792 F.2d 461, 464 (4th Cir.1986). This court has previously noted that the government's duty in carrying out its obligations under a plea agreement is no greater than that of "fidelity to the agreement." *Id.* at 464.
>
> The obvious corollary to the above principle is that the parties must live up to those promises which they do make. This is especially important when the contract is a plea agreement, since the government's performance of its obligations implicates the defendant's constitutional rights. *See United States v. Harvey,* 791 F.2d 294, 300 (4th Cir. 1986).

*Peglera,* 33 F.3d at 414. The Court of Appeals has noted "the honor and integrity of the government require holding [it] responsible for imprecisions or ambiguities in the agreement." *United States v. Dixon,* 998 F.2d 228 (4th Cir.1993) (citing *United States v. Harvey,* 791 F.2d 294, 300–01 (4th Cir.1986)). While recognizing the unique nature of the agreements, however, their interpretation "is largely governed by the law of contracts." *United States v. Martin,* 25 F.3d 211, 216–17 (4th Cir.1994).

■ At issue here is whether the Government breached its obligation in paragraph nine to "make no recommendation . . . as to a specific sentence." The Court does not construe the Government's response as a recommendation of "a specific sentence." Rather, the response brief speaks in basically precatory, general terms, noting a "guideline analogy" and that, under such analogy, "the base offense level *there* is 18, with a 2–level increase for a threat of death" and "the 'amount demanded' under § 2B3.2(b)(2) *might* have justified another 2 or 3 level increase." (Resp. at 9 (emphasis added)). These very general assertions are inconsistent with a "specific" recommendation. *See* Oxford English Dictionary, *available at* http://dictionary.oed.com (defining "specific[,]" in part, as (1) "Precise or exact in respect of fulfilment, conditions, or terms; definite, explicit;" (2) "Exactly named or indicated, or capable of being so; precise, particular."); Merriam Webster's Collegiate Dictionary, *available at* http://www.m-w.com/cgi-bin/dictionary (defining specific as connoting "free[dom] from ambiguity.").

The Court, however, does not rest its decision on that basis. Rather, the Court opines the Government's general comments were warranted and responsive to Defendant's statements to the Court in his Memorandum. In particular, the Government reserved the power under the agreement to "[r]espond to statements made to the Court by or on behalf of Mr. Cook." (Plea agmt. ¶ 9(e)). Without rejoinder by the United States, Defendant could have left the Court with the mistaken assumption that his analysis was the only legally acceptable one employable under the Guidelines. Illustratively, he asserted his analysis was "the *only* appropriate basis

for an upward departure." (Memorandum at 1 (emphasis added)). He also asserted:

> However, a departure beyond these suggested ranges is not justified. Neither the facts of defendant's case, *nor a legal analysis under the Guidelines* and *Koon*, support such an increased sentence.

(*Id.* at 6 (emphasis added)). Defendant could not believe reasonably his hyperbolic assertions would not trigger the Government's reserved power under paragraph 9(e). When Defendant pulled the trigger, the Government did not violate the plea agreement in attempting to present the Court with a competing legal analysis.

Defendant relies on two non-binding cases to support his position. In *United States v. Goldfaden*, 959 F.2d 1324 (5th Cir.1992), the court dealt with an agreement binding the Government to " 'make no recommendation' " as to defendant's sentence. The court of appeals concluded:

> Unlike general descriptions of a defendant's culpability or cooperation, "suggestions" or "positions" on the applicability of certain guidelines, enhancements, and departures translate directly into a range of numerical fig-

ures representing lengths of prison stay.

*Id.* at 1328. In *Goldfaden*, however, the Government was not in the posture of responding to a defendant's assertion the court possessed limited avenues for sentencing. Rather, "After Goldfaden pleaded guilty, the Government [apparently *sua sponte* ] submitted four memoranda to the probation office advocating the use of different guideline sections to calculate his sentence." *Id.* at 1327. The plea agreement language at issue in *Goldfaden* was also different from that employed in this District.

In *United States v. Hayes*, 946 F.2d 230 (3d Cir.1991), the Government agreed it would "make no recommendation as to the specific sentence that the Court should impose." *Id.* at 231. The agreement in *Hayes*, however, apparently did not permit the Government, as here, to "respond to statements made to the Court by or on behalf of Mr. Cook." (Plea agmt. ¶ 9(e)). Further, *Hayes* did not involve an assertion by the defendant that, in essence, his view of the basis and scope of a departure was the only legally permissible one.[2]

---

**2.** *Hayes* noted the following position of the prosecution:

> The government's additional suggestion that "the agreement not to recommend a specific sentence can only be understood, with respect to Count One, as an agreement not to recommend a specific term of incarceration within the guideline range" must be rejected. Brief of Appellee at 15–16. If such a limited concession were intended, it should have been clearly stated in the agreement.

*Hayes*, 946 F.2d at 236. The Court parts company with *Hayes* on this point. The analysis fails to give consideration to a well-established principle of contract interpretation: "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts

§ 203(a) (1979); *see also United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir.1998) ("Therefore, interpreting the plea agreement as the government urges renders part D superfluous, which is obviously not in accord with general principles of contract law."). *Hayes* ignores the word "specific."

The Court also believes its analysis comports more closely with that previously employed by our Court of Appeals. In *United States v. Moore*, 931 F.2d 245 (4th Cir.1991), a case arising from this District and employing similar plea language, the Court of Appeals observed:

> Nevertheless, Moore has claimed that the "spirit" of the plea agreement was violated because the United States sought a "severe prison term" and made " 'a transparent effort to influence the severity' of Moore's sentence." The plea agreement, however, did not restrict the prosecutors as he sug-

In summary, the Government did not violate its promise not to recommend a specific sentence. Because there was no breach of the plea bargain, the Court *DENIES* Defendant's motion for specific performance.

■■■ Had a breach occurred, however, the Court would have been called upon to confront the question of the applicable remedy. Defendant sought specific performance and recusal. Given the uniqueness of this case, the Court believes a few observations are in order on that point. First, in *Peglera* the Court of Appeals stated:

> Because of the government's breach of the plea agreement, we grant appellant the requested specific performance and remand this case for resentencing. At the new sentencing, the government is required to satisfy its obligations under the agreement. We remand the case to a different district judge for resentencing as we are required to do. *See United States v. Brown,* 500 F.2d 375, 378

(4th Cir.1974); *see also Santobello,* 404 U.S. at 263, 92 S.Ct. at 499.

*Peglera,* 33 F.3d at 415. At the same time, the Court of Appeals very recently observed:

> This circuit has previously recognized that "[w]here the bargain represented by the plea agreement is frustrated, *the district court is best positioned to determine whether specific performance, other equitable relief, or plea withdrawal is called for."* United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.1991). Accordingly, we leave to the district court upon remand the task of fashioning an appropriate remedy after considering the recommendations of the parties.

*United States v. Bowe,* 257 F.3d 336, 346 (4th Cir.2001) (emphasis added); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991); *United States v. Jureidini,* 846 F.2d 964, 965–66 (4th Cir.1988) (same). These cases demonstrate beyond cavil that, in the event of a breach, the applicable remedy is committed to the presiding

---

gests and, given the sophistication of both defendant and counsel, the argument of plea agreement violation is without merit.

Defense counsel has made the argument that the "spirit" of the deal was violated. In the case of an unsophisticated or under-represented defendant, we might be inclined to take a less literal view of the terms of the plea agreement, but there is no adequate reason why Moore, represented by very able counsel, should not be held to his word. Governor Moore did not have a reasonable basis to believe that the prosecutor's promise to refrain from recommending a specific sentence protected him from remarks calculated to induce the Court to issue a severe prison term. *Id.* at 250. The analogy to *Moore* is even closer, as Defendant likewise asserts the Government has "violated the spirit of the plea agreement." (Trans. of hearing at 4 (Oct. 26, 2001)).

Other cases are to a similar effect. *See United States v. Lacy,* No. 88–5616, 1990 WL 48824, at *1 (4th Cir. May 3, 1990) (unpub-

lished) (with similar plea agreement language, court stating "The government did not, in fact, recommend a specific sentence to the court. Rather the government recommended incarceration for Lacy and argued that the court should depart upwards from the Guidelines range for Lacy's offenses because of the seriousness of his crimes, the purity of the cocaine involved, and the extent of the obstruction of justice caused by Lacy. We find that this conduct did not violate the agreement or mislead Lacy because the agreement specifically provides that the government can inform the court as to the nature and seriousness of the offenses, and can also correct any inadequacies in the presentence report."); *see also* Jason Pan & Matthew G. Kaiser, Guilty Pleas, 89 Geo.L.J. 1397, 1398 n. 1229 ("In cases where the government agrees not to recommend a specific sentence, courts generally do not preclude the government from making additional comments or recommendations for punishment as long as the government does not recommend a specific sentence.") (collecting cases).

judge. While specific performance and recusal might be one remedy, they surely are not the only remedy. Further, it is the Court, not the offended party, that chooses the remedy.

Defendant's apparent position is that the Government must stand silent in the face of inaccurate arguments narrowing the Court's discretion under *Koon* and the Guidelines. With the Government gagged, he then seeks the assignment of a new sentencing judge, innocent of the knowledge generated by the plea agreement dispute, to sentence in accord with Defendant's view of the case. The approach is flawed for a variety of reasons.

First, that solution is akin to converting the present, unaccepted plea agreement into a Rule 11(e)(1)(C) sentence bargain with a stipulated disposition binding the Court. That approach is myopic. For example, a true sentence "bargain," as the name suggests, depends upon the mutual *agreement* of the parties *and* the Court's approval. No such agreement was ever reached here on the applicable sentence, and the necessary Court approval has not occurred in any event. Defendant's approach expressly attempts to limit the Court's discretion under *Koon*, the Guidelines, and governing law while at the same time forcing the other party to the agreement to stand silent, a silence never bargained-for. This would ignore both Rule 11 and the text of the plea agreement.

Second, one consideration missing from many breach cases is the deferral clause in *Rule* 11(e)(2) permitting a court, as occurred here, to ("defer its decision as to the acceptance or rejection [of the agreement] until there has been an opportunity to consider the presentence report."). Indeed, the agreement itself commands that if such acceptance does not occur, the

agreement "shall be void." (Plea agmt. ¶ 11). When an agreement becomes void, it is "of no legal effect; null." Black's Law Dictionary, *available at* http://web2.westlaw.com. Thus while the parties are free to negotiate and agree to terms under *Rule* 11, they cannot overlook the ultimate, supervisory role exercised by the district court. The plea agreement proffered is a count bargain, governed by *Rule* 11(e)(1)(A). The language of subsection (e)(2) is instructive: "If the agreement is of the type specified in subdivision (e)(1)(A) . . . the court may . . . defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed. R.Crim.Proc. 11(e)(2). It bears observation, as well, that the Court's role is not open to casual discard:

> To be sure, in order to preserve the effectiveness of the plea bargaining system, courts usually will adopt most or all of the recommendations in a non-binding plea agreement. Defendants enjoy no entitlement, however: plea bargains *impose obligations on the prosecution, not the courts. Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). Thus, it cannot be an abuse of discretion to deny a recusal motion predicated on the district court's rejection of a plea agreement.

*United States v. Gordon*, 61 F.3d 263, 267 (4th Cir.1995). The point is that in future cases when either party attacks a conditional plea agreement, the movant should consider the continuing capacity of the Court to reject the agreement under *Rule* 11 where warranted by governing law, render it a nullity, put the parties back in their pre-agreement posture, and yet remain on the case.[3] The agreement is prec-

---

3. *Rule* 11(e)(4) provides pertinently:

**Rejection of a Plea Agreement.** If the court rejects the plea agreement, [it] shall . . .

atory and conditional until accepted by the Court. Defendant's motion for recusal is **DENIED** as moot.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to post a copy on the Court's website at http://www.wvsd.uscourts.gov.

inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.
Fed.R.Crim.Proc. 11(e)(4)