Randolph C. CABRAL, Petitioner,

v.

Robert D. HANNIGAN,
et al., Respondent,

No. 95–3282–DES.

United States District Court,
D. Kansas.

April 30, 1998.

Randolph C. Cabral, Topeka, KS, pro se.

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for Respondents.

Kevin C. Fletcher, (See above), State of Kansas, respondent.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus (Doc. 2) filed pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of thirty years to life for

his conviction of rape. The court finds that the papers filed by the parties and the state court record are sufficient to resolve the case. Accordingly, the court finds that no evidentiary hearing is required to decide petitioner's claims. For the reasons set forth below, petitioner's application for habeas corpus relief is granted.

## I. FACTUAL BACKGROUND

The court is satisfied with the accuracy of the factual summary as set forth by the Kansas Court of Appeals in *Cabral v. State of Kansas*, 19 Kan.App.2d 456, 871 P.2d 1285 (1994), and adopts that summary substantially as follows:

In 1979, Cabral stood charged with illegal possession of marijuana. Cabral agreed to provide information relating to a number of unsolved burglaries and thefts in exchange for dismissal of the marijuana charge and a grant of immunity from prosecution. The immunity agreement was oral. However, after the information was disclosed, Joseph O'Sullivan, the then Reno County Attorney, wrote to Kenneth F. Ehling, Cabral's attorney, summarizing the agreement as follows:

This letter is a follow-up to numerous meetings involving Randy Cabral, Det. Jake Koontz and you and me regarding the above captioned case and other matters. Principally, we discussed the matters listed subsequently in this letter on February 9 and February 16, 1979. At those meetings, we reached an agreement on the disposition of the above captioned case which is as follows.

In exchange for information relating to the below listed criminal offenses, the Reno County Attorneys office will dismiss the matter entitled State vs. Randall Cabral, 78 CR 352 with prejudice. The County Attorney further agrees not to refile the matter concerning the Burglary of Stanley Liquor Store and the assault of one Kathy Frazier. As a further part of the agreement Randy Cabral is given immunity from prosecution on any matter listed below and will not be called as a prosecution witness at any time in any proceeding relating to those offenses. It is understood that Randy Cabral's name may be used in

affidavits associated with search warrants executed for the return of stolen merchandise from the below listed offenses. The matters which were discussed are as follows: [listing of 22 burglaries and thefts].

This letter and a handwritten note made at the time the immunity agreement was finalized are the only written evidence of the terms of the immunity agreement.

The record indicates that Cabral has never been prosecuted for any of the crimes disclosed and mentioned in the immunity agreement, nor has he been called upon to testify concerning any of the matters stated. However, at the time of his sentencing for convictions of aggravated kidnapping and rape in 1979, O'Sullivan told the court:

Randy Cabral is no stranger to the courts of Reno County, Kansas, although he has only one prior felony conviction..... I can tell this court that as early as the spring of 1979 Mr. Cabral had a felony possession of marijuana complaint dismissed against him in exchange for his cooperation in clearing 27 burglaries and thefts. At that time it was discussed with him Mr. Cabral, your slate is clean. You have immunity from prosecution for any crime that you've committed. You can start anew in this community. You can clear everything because we're not going to prove it anyway and he did his best; and the discussions were had at that time that now it can be a new life if you want it. He then commits this crime which I think makes it that much more reprehensible and considering the background that he had and the time that he spent in the penitentiary and the penalty he knows one faces for committing crimes this still happened.

Cabral testified that while O'Sullivan was making the remarks, he turned to his attorney and said: "I don't think he's supposed to be saying those things or mentioning any of that stuff." According to Cabral, his attorney replied, "[I]t doesn't make any difference; you're going to do a life sentence anyway." No contemporaneous objection was made regarding the prosecutor's comments.

Cabral was sentenced to life in prison for the aggravated kidnapping and 30 years to life for the rape. The Kansas Supreme Court reversed the conviction for aggravated kidnapping and affirmed the conviction for rape. *State v. Cabral*, 228 Kan. 741, 619 P.2d 1163 (1980).

In 1990, Cabral filed a motion pursuant to Kan.Stat.Ann. § 60–1507, which the trial court initially denied without an evidentiary hearing. The Kansas Court of Appeals reversed the trial court's decision and remanded for a hearing. *Cabral v. State*, 818 P.2d 357 (1991). At the hearing on remand, evidence was introduced including a letter from Kenneth Ehling in which he informs Cabral that O'Sullivan stated, on the day before sentencing, that he would not refer to the immunity agreement at sentencing. O'Sullivan, however, denied making this statement. The record also contains testimony by Judge J. Stanley Hill, the trial judge who imposed Cabral's sentence for aggravated kidnapping and rape. Judge Hill testified that, in sentencing Cabral, he did not consider O'Sullivan's remarks concerning un-prosecuted burglaries. The trial court concluded that, even if the immunity agreement was breached, Cabral had waived any right to raise the issue.

Cabral appealed the trial court's denial of relief on remand and the Kansas Court of Appeals affirmed on different grounds. The Kansas Court of Appeals found "that the remarks were improper and breached the spirit, if not the literal terms, of the immunity agreement." *Cabral*, 871 P.2d at 1289. The court of appeals nonetheless affirmed the trial court's decision, concluding that "although the prosecutor's mention of the immunity agreement was wrongful and erroneous, it was harmless error at best." *Id.* at 1293.

## II. STANDARDS

■ A district court can entertain an application for a writ of habeas corpus only on the ground that the applicant is in custody in violation of the Constitution or law or treaties of the United States. 28 U.S.C. § 2254(a). Exhaustion of state court reme-

dies on claims presented for habeas corpus review is required. 28 U.S.C. § 2254(b).

## III. DISCUSSION

Petitioner contends his custody is in violation of the United States Constitution because the state prosecutor breached the immunity agreement at petitioner's sentencing by revealing information obtained in exchange for petitioner's immunity. This breach, petitioner contends, deprived him of his privilege against compulsory self-incrimination as guaranteed by the Fifth and Fourteenth Amendments and thus requires vacation of his current sentence and re-sentencing by a different judge. Respondents contend that the prosecutor did not breach the immunity agreement, or, alternatively, that the breach resulted in harmless error. Respondents also contend that petitioner's motion is procedurally barred because he waived his right to raise the breach of immunity agreement issue in federal court. The court will first address respondent's waiver argument.

■ Respondents argue that petitioner waived his right to raise the breach of immunity agreement issue in federal court because he failed to object to the prosecutor's comments at the sentencing hearing and because he failed to raise the issue on direct appeal in state court. Generally, the procedural default doctrine precludes federal habeas review of a federal claim which a state court has declined to consider because of the petitioner's noncompliance with state procedural rules "absent a showing of 'cause' and 'prejudice' attendant to a state procedural waiver[.]" *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (quotations omitted). "This rule necessarily applies only when a state court has been presented with the federal claim[.]" *Id.* at n. 9; *see also Teague v. Lane*, 489 U.S. 288, 299, 109 S.Ct. 1060, 103 L.Ed.2d 334

(1989) (plurality) (noting that the *Harris* rule is "simply inapplicable ... where the claim was never presented to the state courts").

■ The last state court rendering a judgment in this case was the Kansas Court of Appeals. In so doing, the Kansas Court of Appeals clearly reached the merits of petitioner's federal claim without addressing a procedural default question. *See Cabral v. State of Kansas,* 19 Kan.App.2d 456, 871 P.2d 1285 (1994). Accordingly, any procedural bar to federal habeas review in this case is lifted and the court will address the merits of petitioner's claim. *See Church v. Sullivan,* 942 F.2d 1501 (10th Cir.1991) (petitioner's claims were not precluded from federal habeas review absent showing that state court had invoked procedural bar as to any claim before it).

Petitioner claims the prosecutor breached the immunity agreement by revealing at petitioner's sentencing information obtained in exchange for petitioner's immunity. The Kansas Court of Appeals addressed petitioner's breach of immunity agreement claim and found that the prosecutor had indeed breached the agreement. The court agrees with the Kansas Court of Appeals' finding of breach for substantially the same reasons.

■ As the Kansas appeals court noted, the immunity agreement was in oral form although some of its terms were reduced to writing in the form of a contemporaneous handwritten note and a letter from O'Sullivan to Ehling. The written terms of the agreement did not expressly prohibit use of incriminating information provided by petitioner at sentencing for a subsequent unrelated crime. Petitioner contends, however, that the agreement was reasonably understood to prohibit use of inculpatory information in any manner contrary to his Fifth Amendment rights to due process and against compulsory self-incrimination.

In this case, it is clear from the record that O'Sullivan intended to secure petitioner's cooperation by offering protection from prosecutions relating to any information obtained in exchange for the grant of immunity. Less clear, however, is whether information about crimes revealed under the grant of immunity . could be used to affect petitioner's sentence in an unrelated crime. In light of this ambiguity, a decision regarding the meaning of the agreement is necessary.

■ Since an immunity agreement is contractual in nature, its effect is strongly influenced by contract law principles. *United States v. Black,* 776 F.2d 1321, 1329 (6th Cir.1985) (immunity agreement is contractual in nature); *Rowe v. Griffin,* 676 F.2d 524, 528 (11th Cir.1982) (applying contractual analysis to promises of immunity); *cf. United States v. Bunner,* 134 F.3d 1000 (10th Cir.1998) (construing plea agreement according to principles of contract law). *See also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The court will strictly construe the agreement against the state. *See Rowe,* 676 F.2d at 526 n. 4. *Cf. United States v. Massey,* 997 F.2d 823, 824 (10th Cir.1993) (ambiguities in plea agreement resolved against the drafter). The court will also interpret the agreement according to petitioner's reasonable understanding at the time he entered into the agreement. *See United States v. Rockwell Intern. Corp.,* 124 F.3d 1194, 1199 (10th Cir. 1997) (analyzing plea agreement based upon defendant's reasonable understanding at the time he entered the plea agreement); *Rowe,* 676 at 528 (interpreting immunity agreements pursuant to principles applied to interpretation of plea agreements). *See also United States v. Conway,* 81 F.3d 15, 17 (1st Cir.1996).

■ Under foregoing standards, the court finds that petitioner cooperated with. O'Sullivan based on a reasonable belief that O'Sullivan's promise of immunity protected petitioner against any punitive use of disclosed inculpatory information. In other words, what reasonably appeared to be an absolute promise of immunity induced petitioner to forfeit his Fifth Amendment rights and cooperate with the prosecutor by revealing certain self-incriminating evidence. Agreements of this nature are enforced in the interest of protecting "the fairness, integrity, and public reputation of judicial proceedings." *U.S. v. Goldfaden,* 959 F.2d 1324 (5th Cir.1992). They are also enforced to protect the "voluntariness of a waiver of fifth

amendment rights." *United States v. Weiss,* 599 F.2d 730, 737 (5th Cir.1979). Due process, therefore, "requires that the government adhere to the terms of any plea bargain or immunity agreement it makes." *United States v. Pelletier,* 898 F.2d 297 (2nd Cir. 1990) (citing *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)) (additional citations omitted). *See United States v. Lyons,* 670 F.2d 77, 80 (7th Cir.1982) ("[a]ny agreement [concerning immunity] made by the government must be scrupulously performed and kept").

O'Sullivan's remark about the subject of the immunity agreement was made at petitioner's sentencing hearing for aggravated kidnaping and rape. As the Kansas Court of Appeals recognized, O'Sullivan's purpose in referring to petitioner's involvement in the burglaries was obvious. He wanted to use the information as a means to enhance petitioner's sentence. As such, O'Sullivan was attempting to punish petitioner with information obtained solely through the promise of immunity, which promise induced petitioner to forfeit his Fifth Amendment rights and reveal self-incriminating information. The court finds that O'Sullivan's intentional use of information obtained in exchange for what defendant reasonably construed as a broad promise of immunity breached the immunity agreement and violated petitioner's Fifth Amendment rights.

The question remaining is whether the prosecutor's violation of the immunity agreement requires vacation of petitioner's sentence. Respondents contend that the prosecutor's remarks constituted harmless error and therefore vacation is not required. Petitioner suggests that the harmless error doctrine is not applicable in this case and that the government's breach of the immunity agreement automatically requires remand for re-sentencing by a different judge.

In support of his argument, petitioner cites *Santobello,* 404 U.S. at 257, 92 S.Ct. 495, in which a state prosecutor failed to keep a commitment regarding a sentence recommendation on a guilty plea. The Supreme Court remanded the case with directions that the defendant be given an opportunity to withdraw his plea of guilty or be re-sentenced by a different judge. The Supreme Court expressly avoided measuring the prejudicial effect of the state's conduct on the defendant's rights and stated:

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

*Id.* at 262, 92 S.Ct. 495. *See also United States v. Thomas,* 580 F.2d 1036 (10th Cir. 1978).

Although the *Santobello* case concerned a promise of immunity made in exchange for a plea of guilty, the court sees no reason to hold the government to a different standard with respect to promises of immunity made in exchange for other forms of cooperation and under which a plea is not contemplated. An immunity agreement is as much in the nature of a contract as a plea agreement. Under both types of agreements, the government promises a certain degree of forbearance in exchange for some form of cooperation from the defendant or prospective defendant. Also under both types of agreements due process is implicated because the defendant or prospective defendant forfeits important constitutional rights in reliance on promises made by prosecutors. Failure of the government to uphold its side of the bargain, whether in a plea agreement or immunity agreement, violates due process and "affects the fairness, integrity, and public reputation of judicial proceedings." *Goldfaden,* 959 F.2d 1324. The court therefore finds that the harmless error analysis does not apply where, as here, a prosecutor deliberately attempts to make punitive use of information obtained in exchange for a grant of immunity. Instead, a petitioner "is entitled to relief regardless of whether the

government's conduct actually affected the sentencing judge." *United States v. Hawley*, 93 F.3d 682, 693 (10th Cir.1996) (remanding where government breached plea agreement). Accordingly, petitioner's sentence must be vacated and the case remanded for re-sentencing. *See Pelletier*, 898 F.2d at 303 ("The deliberate direct use at trial of all of a defendant's immunized grand jury testimony in violation of the government's express agreement to the contrary violates due process, . . . . and cannot be considered harmless error."); *United States v. Fant*, 974 F.2d 559, 564–65 (4th Cir.1992) (remanding for re-sentencing because use of defendant's immunized statements for purposes of sentence enhancement qualifies as "plain error").

**IT IS THEREFORE BY THE COURT ORDERED** that petitioner's application for habeas corpus relief (Doc. 2) is granted.

**IT IS FURTHER ORDERED** that petitioner's sentence be vacated and this case remanded to the Kansas state courts for re-sentencing within sixty days of the date of this order.