ACCEPTED
05-12-01096-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/12/2015 2:50:33 PM
LISA MATZ
CLERK

**ORAL ARGUMENT
REQUESTED**

No. 05-12-01096-CR

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

3/12/2015 2:50:33 PM

LISA MATZ
Clerk

IN THE

COURT OF APPEALS

FIFTH DISTRICT OF TEXAS AT DALLAS

CHARLES EDWARD SIELOFF III,
Appellant,

v.

THE STATE OF TEXAS,
Appellee.

## APPELLANT'S REPLY BRIEF

Appeal from the 203rd Judicial District Court
of Dallas County, Texas

MELVYN CARSON BRUDER

516 Turley Law Center
6440 N. Central Expressway
Dallas, Texas 75206
214.987.3500
214.987.3518 FAX
melvyn@melvynbruderlaw.com

Counsel for Appellant

# **TABLE OF CONTENTS**

Index of Authorities ...................................................................................... ii

Issue One Presented for Review ..................................................................... 2

   The State's failure to keep its commitment to not take any position with
   respect to Mr. Sieloff's request to the Court at the time of sentencing
   that the Court order Mr. Sieloff placed on community supervision and
   that as a condition of community supervision Mr. Sieloff be ordered to
   participate in a Substance Abuse Felony Program requires reversal of
   Mr. Sieloff's conviction and a remand of the case to allow Mr. Sieloff
   to withdraw his plea of guilty or to be re-sentenced before a different
   judge.

Supplemental Statement of Facts ................................................................... 2

Summary of the Supplemental Argument ....................................................... 3

Supplemental Argument ................................................................................. 5

   Conclusion ............................................................................................. 14

Prayer .......................................................................................................... 14

Certificate of Service ................................................................................... 15

Certificate of Word Count ........................................................................... 15

# INDEX OF AUTHORITIES

*Cases*:

*Bass v. State*
   576 S.W.2d 400 (Tex.Crim.App.1979)   ................................  6, 17

*Beverly v. State*
   792 S.W.2d 103 (Tex.Crim.App.1990)   ....................................  13

*Bitterman v. State*
   180 S.W.3d 139 (Tex.Crim.App.2005)   ..............................  6, 7, 8

*Bowman v. State*
   No. 05-13-01349-CR (Tex.App. – Dallas Feb. 10, 2015)   .......................  12

*Brechiesen v. State*
   4 S.W.3d 761 (Tex.Crim.App.1999)   ..................................  11, 17

*Cole v. State*
   Nos. 03-04-00067-68, 2004 Tex.App., LEXIS 11218 (Tex.App.–
   Austin Dec. 16, 2004)   ................................................  18

*DeJarnett v. State*
   732 S.W.2d 346 (Tex.Crim.App.1987)   ...................................  13

*Ford v. State*
   158 S.W.3d 488 (Tex.Crim.App.2005)   ..................................  12

*Holmes v. State*
   323 S.W.3d 163 (Tex.Crim.App.2010)   ..............................  11, 17

*Kercheval v. United States*
   274 U.S. 224, 47 S.Ct. 582, 71 L.Ed.2d 1009 (1927)   ..............................  6

*Miller v. State*
   608 S.W.2d 931 (Tex.Crim.App. [Panel Op.] 1980)   ...............................  6

*Missouri v. McNeely*
   569 U.S. ___, 133 S.Ct. 1552 (2013)   ....................................  11

*Puckett v. United States*
   556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed 266 (2009)   ...............................  7

*Santobello v. New York*
   404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)  ........................  *passim*

*Smith v. State*
   719 S.W.2d 848 (Tex.Crim.App.1987)  ....................................  13

*State v. Villarreal*
   No. PD-0306-14 (Tex.Crim.App.Nov. 26, 2014)  ....................................  11

*State v. Woodard*
   341 S.W.3d 404 (Tex.Crim.App.2011)  ....................................  14

*Steelman v State*
   93 S.W.3d 102 (Tex.Crim.App.2002)  ....................................  14

*Torres v. State*
   182 S.W.3d 899 (Tex.Crim.App.2005)  ....................................  12

*United States v. Goldfaden*
   959 F.2d 1324 (5th Cir.1992)  ....................................  10

*United States v. Hayes*
   946 F.2d 230 (3rd Cir.1991)  ....................................  10

**Constitutions**:

   U.S.CONST. amend. IV  ....................................  11

**Statutes**:

   TEX.CRIM.PROC.CODE art. 14.01(b)  ....................................  13

**Rules**:

   FED.R.CRIM.P. 52(b)  ....................................  16
   TEX.R.APP.P. 44.2(a)  ....................................  4, 5, 11, 14, 16
   TEX.R.APP.P. 44.2(b)  ....................................  5, 11, 14

**Miscellaneous**:

   GERTRUDE STEIN, GEOGRAPHY AND PLAYS186 (Four Seas 1922)  ..................  17

No. 05-12-01096-CR

IN THE

COURT OF APPEALS

FIFTH DISTRICT OF TEXAS AT DALLAS

CHARLES EDWARD SIELOFF III,

Appellant,

v.

THE STATE OF TEXAS,

Appellee.

**APPELLANT'S REPLY BRIEF**

Appeal from the 203rd Judicial District Court
of Dallas County, Texas

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

CHARLES EDWARD SIELOFF III, Appellant, files this brief in reply to the

State's Response Brief filed herein.

## ISSUE ONE PRESENTED FOR REVIEW

The State's failure to keep its commitment to not take any position with respect to Mr. Sieloff's request to the Court at the time of sentencing that the Court order Mr. Sieloff placed on community supervision and that as a condition of community supervision Mr. Sieloff be ordered to participate in a Substance Abuse Felony Program requires reversal of Mr. Sieloff's conviction and a remand of the case to allow Mr. Sieloff to withdraw his plea of guilty or to be re-sentenced before a different judge.

## SUPPLEMENTAL STATEMENT OF FACTS

Prior to trial Mr. Sieloff filed a Motion to Suppress Evidence in which he challenged *inter alia* the State's "use at the trial of this case of all evidence, whether testimonial or physical, relating to or resulting from the arrest of the Defendant and the searches of the defendant and the defendant's property effected by law enforcement officials on . . . the ground that such arrest and searches were conducted without warrants and without probable cause to support such arrest and searches." Clerk's Record (CR) 42.

The basis of Mr. Sieloff's challenge to the admissibility of evidence relating to and resulting from his arrest was the fact that he was arrested without a warrant for a misdemeanor offense by a peace officer who did not observe Mr. Sieloff commit an offense and that blood was forcibly drawn from Mr. Sieloff following his arrest without a warrant authorizing that blood draw. A hearing held on Mr. Sieloff's Motion to Suppress Evidence would have produced the following facts: That on 20 November 2010 a vehicle fire occurred on State Highway 183 in Irving; that following the arrival of a fire truck at the scene of the vehicle fire, a motor vehicle

accident occurred; that Irving police Officer Huckaby arrived at the scene in response to the vehicle fire, learned of the two-vehicle accident that had taken place, was informed that a gray 2009 Honda Accord with extensive front-end damage had been involved in the accident and had left the scene; that Officer Huckaby then left the scene and located the Honda, which was being driven by Mr. Sieloff, and stopped it; that Officer Huckaby contacted Mr. Sieloff and suspected him of being intoxicated; that after performing the standardized field sobriety tests on Mr. Sieloff, Officer Huckaby arrested Mr. Sieloff for driving while intoxicated; that at the time he stopped the vehicle being driven by Mr. Sieloff and at the time he arrested Mr. Sieloff Officer Huckaby did not have or know of a warrant authorizing Mr. Sieloff's arrest; that at the time he stopped the vehicle being driven by Mr. Sieloff he did not have or know of a warrant authorizing a seizure and search of that vehicle; that Officer Huckaby learned Mr. Sieloff had "a conviction for DWI 3d or more" and that following his arrest Mr. Sieloff "was transported to the Baylor Medical Center of Irving for a mandatory blood draw;" that blood was drawn from Mr. Sieloff at the Baylor Medical Center of Irving without a warrant authorizing that blood draw; and that an analysis of the blood drawn from Mr. Sieloff showed an alcohol concentration greater than 0.08."[1]

## SUMMARY OF THE SUPPLEMENTAL ARGUMENT

A plea bargain that rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration for the plea, must be scrupulously honored. If a prosecutor fails to honor his part of

a plea bargain, the plea violates due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The failure of the prosecutor in this case to honor his agreement not to take a position with respect to Mr. Sieloff's request to the Court at the time of sentencing for community supervision and for the imposition of a condition that Mr. Sieloff be required to participate in the Substance Abuse Felony Program was error under *Santobello*.[2] Because of the nature of the error, *Santobello* prescribes as the only remedy that the accused's conviction be set aside and that the case be remanded for a determination of whether to enforce the plea bargain or to permit the accused to withdraw his plea. The denial to a guilty-pleading accused of the benefit of his bargain is a constitutional error. The harm analysis applicable in this case is set out in TEX.R.APP.P. 44.2(a) because the error unquestionably contributed to Mr. Seiloff's conviction, inasmuch as his conviction was predicated upon a plea of guilty, and to his sentence.

The record demonstrates that on 2 September 2011 Mr. Sieloff requested that the case be rescheduled to 1 December 2011 for the purpose of hearing his Motion to Suppress Evidence, that on 1 December 2011 the case was rescheduled to 21 December 2011, at which time it was rescheduled to 26 January 2012 for an "open plea of guilty." There is evidence in the record tending to establish that during late 2011 Mr. Sieloff clearly sought to suppress his arrest and the fruits of that arrest but later gave up those efforts and agreed to plead guilty to the offense charged.[3]

Mr. Sieloff suffered harm as a result of the prosecutor's breach of the plea

bargain agreement in that Mr. Sieloff surrendered his right to challenge the validity of his warrantless arrest and his right to challenge the validity of the warrantless search for and seizure of the blood taken from him in return for the unkept promise of the prosecutor. The challenges to the validity of Mr. Sieloff's warrantless arrest and to the warrantless draw of his blood could (and should) have resulted in the suppression of Mr. Sieloff's arrest and/or in the suppression of the blood draw. The rulings on those issues would have impacted Mr. Sieloff's decision whether to plead guilty or proceed to trial.

## THE STATE'S ARGUMENTS

The State presents three arguments to counter Mr. Sieloff's *Santobello* claim. First, the State argues that Mr. Sieloff waived his right to present the claim on appeal.[4] Second, the State argues that the record fails to show the existence of the agreement claimed by Mr. Sieloff, and, if there was such an agreement, that the agreement was breached.[5] Finally, the State asserts the error is reviewable under TEX.R.APP.P. 44.2(b) and that the error, if any, was harmless.[6]

## SUPPLEMENTAL ARGUMENT

### *I. Waiver*

When the State and a defendant enter into a plea bargain that calls for the defendant to plead guilty and the defendant fulfills his part of the bargain, the State is obligated to scrupulously honor its part of the bargain. Any failure to do so renders the defendant's plea of guilty involuntary because, as stated in *Santobello*, "a plea of guilty must be attended by safeguards to insure" that any "promise or inducement of

the prosecutor" related to the plea is fulfilled. *Santobello*, *supra*, 404 U.S. at 262. This conclusion is predicated on the premise that a plea of guilty must be voluntary and knowing. A plea that is induced by an unkept promise of a prosecutor cannot be voluntary and knowing because the plea and its concomitant waivers of fundamental constitutional rights have, as a matter of law, been unfairly obtained. *Santobello*, *supra*, 404 U.S. at 261; 404 U.S. at 264-67 (Douglas, J., concurring).

The remedy for a violation of *Santobello* is to remand the case for further consideration of whether to order specific performance of the agreement on the plea or to permit the defendant to withdraw his plea. *Santobello*, *supra*, 404 U.S. at 262-63. Harm is simply not relevant. As stated by Mr. Justice Douglas in his concurring opinion in *Santobello*, a plea of guilty that is unfairly obtained must be vacated irrespective of "any question of guilt or innocence." *Santobello*, *supra*, 404 U.S. at 265 (Douglas, J., concurring) (quoting from *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed 1009 (1927). *Santobello* error is harmful as a matter of law. *See Miller v. State*, 608 S.W.2d 931, 932 (Tex.Crim.App. [Panel Op.] 1980), and *Bass v. State*, 576 S.W.2d 400 (Tex.Crim.App.1979).

With respect to whether Mr. Sieloff preserved the *Santobello* issue for review, the applicable rule in Texas is set out in *Bitterman v. State*, 180 S.W.3d 139 (Tex. Crim.App.2005). In that case the court of appeals held that Bitterman did not preserve *Santobello* issues for review because he failed to object at the time the error occurred. The Court of Criminal Appeals concluded that in cases where a defendant has waived all his fundamental constitutional rights and entered a plea of guilty in

exchange for a promise by the State, an accused need not make a contemporaneous objection to the error so long as he includes the error in a motion for new trial.

> . . . Based upon the underlying constitutional due process principles involved when a defendant agrees to plea guilty in return for a promise by the State, as well as upon a long history of Texas cases supporting a defendant's right to withdraw a plea once the State has violated the plea bargain, we hold that Appellant properly preserved the issue of the plea bargain breach by bringing it to the trial court's attention as soon as the error could be cured, in a motion for new trial.

*Bitterman v. State, supra*, 130 S.W.3d at 144. Mr. Sieloff did precisely what Bitterman did - included his claim of *Santobello* error in a timely filed motion for new trial. The issue was therefore properly preserved for appellate review.

The State's reliance on *Puckett v. United States*[7] is misplaced. That case involved a forfeited claim, *i.e.*, one not raised in the trial court, and the decision turned on whether Puckett's claim was cognizable on appeal under the plain-error rule.[8] The Supreme Court concluded that Puckett had forfeited his claim, but that his claim was reviewable under the plain-error rule. *Puckett* does not apply in this case for several reasons. First, *Puckett* involved issues raised under the federal rules, not state rules, and its holding was not bottomed on the Fourteenth Amendment. Second, unlike Puckett, Mr. Sieloff did not forfeit his claim because he raised it in a timely filed motion for new trial, consistent with the requirement of *Bitterman*.[9] And, to the extent that Mr. Sieloff is obliged to show harm, he has done so, as set forth in the third part of this brief.[10]

## CONCLUSION

The prosecutor breached an agreement made with Mr. Sieloff that induced Mr.

Sieloff to give up his right to challenge his arrest and the warrantless seizure of his blood. That breach was included in a timely-filed motion for new trial which the trial court overruled. Mr. Sieloff is entitled, under *Bitterman*, to have the *Santobello* issue resolved on its merits by this Court.[11] For the reasons set forth in the Appellant's Brief filed in this case, this Court should reverse Mr. Sieloff's conviction and sentence, an should remand the case for further proceedings.

## II. Merits

The agreement in question called for the State to refrain from taking "any position with respect to Mr. Sieloff's request to the Court at the time of sentencing that the Court order Mr. Sieloff placed on community supervision and that as a condition of community supervision Mr. Sieloff be placed in a Substance Abuse Felony Program" in return for Mr. Sieloff "giving up his right to proceed on the Motion to Suppress Evidence that he filed prior to trial in this case" and Mr. Sieloff pleading guilty to the offense charged in the indictment. Motion for New Trial. CR 58; State's Response Brief 18. The affidavit filed in support of the Motion for New Trial recited *inter alia* that the prosecutor and Mr. Sieloff's trial counsel "reached an agreement whereby Mr. Sieloff agreed to plead guilty to the offense charged in the indictment in this case and Mr. Sieloff agreed to forego pursuing his rights under his Motion to Suppress Evidence, which was scheduled for a hearing, in return for the State not making any statement at the punishment or sentencing hearing relating to Mr. Sieloff's request for community supervision and Mr. Sieloff's request for the trial court to order him to SAFP." Motion for New Trial, CR 62; State's Response Brief

18.

At the conclusion of Mr. Sieloff's sentencing hearing, the prosecutor waived his right to make an opening statement. RR 19. Mr. Sieloff's counsel then argued that the trial court should place Mr. Sieloff on community supervision and impose as a condition of community supervision that he be ordered to attend either SAFP or the Wilmer treatment facility.[12] RR 19-21. The prosecutor then replied with the following:

> He's had numerous DWIs. It's obvious he's had treatment. He's had pen time. There just comes a point where, if you are going to consider any kind of treatment, it needs to be something like SAFP along with probation or, in the alternative, **a prison sentence will also keep him off the streets and sober for the next several years**.

RR 21 (emphasis added).

It is the highlighted portion of the prosecutor's closing argument about which complaint is made in this case. The State argues that "a close and accurate reading of the . . . complained of comments reveals that the State did not contend that Appellant should receive a prison sentence" and thus the record does not show any violation of the agreement in question. State's Response Brief 18. The State characterizes the objectionable comment as "an editorial-type comment, not an assertion that the trial court should not place Appellant on probation and order Appellant to attend SAFP." *Id*. at 19.

The agreement called for the prosecutor to not take "any position with respect to Mr. Sieloff's request to the Court at the time of sentencing that the Court order Mr. Sieloff placed on community supervision and that as a condition of community

supervision Mr. Sieloff be placed in a Substance Abuse Felony Program." In response to Mr. Sieloff's request for community supervision and treatment in SAFP or Wilmer, the prosecutor's suggested "alternative" treatment that **a prison sentence will also keep him off the streets and sober for the next several years** cannot seriously be said to comply with the spirit or the letter of the agreement that the prosecutor not take any position with respect to a request for community supervision and for SAFP. However the State chooses to characterize the statement, the statement clearly conveyed to the trial court that the prosecutor considered "a prison sentence" to be a viable alternative to community supervision that would keep Mr. Sieloff off the streets and sober. That is the antithesis of what the prosecutor promised to do - to make no statement in opposition to Mr. Sieloff's request for community supervision. *See United States v. Goldfaden*, 959 F.2d 1324 (5th Cir.1992) and *United States v. Hayes*, 946 F.2d 230 (3rd Cir.1991), each holding that the government's agreement not to make any sentencing recommendation was violated when government advocated use of certain sentencing guideline levels. Like Gertrude Stein's rose,[13] "do not take a position with respect to Mr. Sieloff's request for community supervision" means just that - do not take a position with respect to Mr. Sieloff's request for community supervision; it does not include suggesting to the trial court an alternative sentence of imprisonment. Given the prosecutor's promise, the statement recommending imprisonment is, quite simply, a statement that never should have been made.

### III. Harm

Although we believe that violations of *Santobello* require reversal and remand without a showing of harm, Mr. Sieloff was unquestionably harmed by the prosecutor's improper comment in this case.[14]  That harm is based on the value of what he surrendered in return for the prosecutor's promise.[15]

We disagree with the State that the harm analysis in this case should be conducted pursuant to Rule 44.2(b)[16] and contend that the harm analysis applicable in this case is the one contained in Rule 44.2(a).  It cannot be disputed that the *Santobello* error in this case contributed directly to the conviction and to the sentence imposed in this case.  But for the prosecutor's promise, Mr. Sieloff would not have pleaded guilty, upon which his conviction is based.  Moreover, the sentence imposed upon Mr. Sieloff occurred after the *Santobello* error occurred.  *See Holmes v. State*, 323 S.W.3d 163, 173-74 (Tex.Crim.App.2010), and *Brecheisen v. State*, 4 S.W.3d 761, 764-65 (Tex.Crim.App.1999), holding that error which contributes to an accused's decision to plead guilty falls under Rule 44.2(a).  Under these circumstances, and given the nature of *Santobello* error, this case must be reviewed under Rule 44.2(a).

However, in either event - whether Rule 44.2(a) or 44.2(b) is applied, Mr. Sieloff suffered harm that renders the error harmful.

### A.  The Seizure Of Mr. Sieloff's Blood

Mr. Sieloff gave up his right to challenge the warrantless seizure of his blood as part of the bargain in question.[17]

In 2013 the Supreme Court declared that the warrantless seizures of blood from DWI arrestees violated the Fourth Amendment. *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552 (2013). That is precisely what occurred in this case. There can be no doubt that had Ms. Sieloff challenged the warrantless seizure of his blood in this case, the challenge would ultimately have been sustained by the trial court following a motion to suppress hearing, *State v. Villarreal*, No. PD-0306-14 (Tex.Crim.App. Nov. 26, 2014, mot.reh.granted), or sustained on appeal. *Bowman v. State*, No. 05-13-01349-CR (Tex.App. – Dallas Feb. 10, 2015) slip.op. 10-16.

The suppression of the blood test and its results would have impacted Mr. Sieloff's decision to plead guilty or not guilty, particularly in light of the State's inclusion in the indictment of an allegation that Mr. Sieloff's alcohol level exceeded 0.08. CR 9.

By foregoing his right to proceed on his motion to suppress in return for the prosecutor's promise not to oppose his request for community supervision, Mr. Sieloff suffered demonstrable harm that affected his decision to plead guilty and thus directly impacted his conviction.

### B. Mr. Sieloff's Arrest

Mr. Sieloff was arrested without a warrant by a police officer following the warrantless stop of his vehicle. Thus the State bore the burden of proving the reasonableness of the stop and the arrest. *Torres v. State*, 182 S.W.3d 899, 902 (Tex.Crim.App.2005).

### I.

### *No Probable Cause*

Officer Huckaby stopped the vehicle driven by Mr. Sieloff without obtaining or knowing about a warrant authorizing that stop. The record does not reveal that Officer Huckaby observed Mr. Sieloff commit any offense for which he was authorized to make a warrantless stop of Mr. Sieloff's vehicle.

Probable cause to believe an offense has been or is being committed and for which a citizen's freedom of action can be interrupted by a police officer must be based on facts, not conclusions or opinions. *Torres v. State*, *supra*, 182 S.W.3d at 903 (citing *Ford v. State*, 158 S.W.3d 488, 493-94 (Tex.Crim.App.2005). There are no facts apparent in the record upon which Officer Huckaby could have reasonably relied to conclude that Mr. Sieloff had committed or was committing an offense for which Officer Huckaby was authorized to make a warrantless stop of Mr. Sieloff's car. Based on the facts known to Mr. Sieloff at the time he filed his Motion to Suppress Evidence and at the time he surrendered his right to proceed on that motion the State could not have carried its burden to show that there was probable cause and facts to show an exception to the requirement of a warrant.

The suppression of the arrest of Mr. Sieloff would have emasculated the State's ability to prosecute him in this case. The suppression of the arrest of Mr. Sieloff and all evidence obtained as a result of that arrest would have left the State with no evidence to establish the elements of the offense. Thus, foregoing his right to proceed on the motion to suppress evidence was harmful to Mr. Sieloff.

## II.

### *Strict Compliance with Article 14.01(b)*

The right of a peace officer to make a warrantless arrest for a misdemeanor in Texas is limited to one of the statutory exceptions. *Beverly v State*, 792 S.W.2d 103, 104-105 (Tex.Crim.App.1990). Because of the constitutional protections they provide, those statutes are strictly construed. *DeJarnett v. State*, 732 S.W.2d 346, 349 (Tex.Crim.App.1987 ). Warrantless arrests may occur in Texas only in the most limited of circumstances upon a showing of probable cause and the existence of circumstances which made the procuring of a warrant impracticable. *Smith v. State*, 719 S.W.2d 848, 851-52 (Tex.Crim.App.1987).

Article 14.01(b) permits warrantless arrests for offenses committed in an officer's presence or within his view. An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence. *Steelman v. State*, 93 S.W.3d 102, 107-108 (Tex.Crim.App.2002). If an arrest for driving while intoxicated is made without a warrant and the offense was not committed in the presence or view of any peace officer, the arrest cannot be justified under article 14.01(b). *Torres v. State*, *supra*.

Under the facts known to Mr. Sieloff at the time he waived his right to urge his Motion to Suppress Evidence, Officer Huckaby's arrest of Mr. Sieloff for driving while intoxicated was unlawful because the officer was not aware that Mr. Sieloff had committed or was committing any offense. Accordingly, he was not authorized to arrest Mr. Sieloff for driving while intoxicated without a warrant.

-14-

## CONCLUSION

For each of the foregoing reasons, had Mr. Sieloff urged his motion to suppress he would have prevailed, which would have impacted the State's ability to prosecute him in this case. Surrendering the right to proceed on the motion to suppress evidence was therefore a valuable right which demonstrates harm, within the meaning of Rule 44.2(a) or (b).

## PRAYER

For the reasons stated above and in his Appellant's Brief, Mr. Sieloff prays that this Court reverse his conviction and sentence and remand the case for further proceedings.

Respectfully submitted,

/s/   Melvyn Carson Bruder

MELVYN CARSON BRUDER

Texas State Bar No. 03241000
516 Turley Law Center
6440 N. Central Expressway
Dallas, Texas 75206
214.987.3500
214.987.3518  FAX
melvyn@melvynbruderlaw.com

Counsel for Appellant

-15-

## CERTIFICATE OF SERVICE

I certify that on 12 March 2015 I served a true and correct copy of the foregoing brief upon Michael Casillas, who is counsel of record for the State of Texas in this case, via first class United States mail, postage prepaid, in Dallas, Texas, at the Frank Crowley Courts Building, 133 N. Riverfront Boulevard, Dallas, Texas 75207.

/s/   Melvyn Carson Bruder

_____

MELVYN CARSON BRUDER


## CERTIFICATE OF COMPLIANCE

I certify that this petition contains 5368 words based on the word count of the Word Perfect X5 program used to prepare the petition.

/s/   Melvyn Carson Bruder

_____

MELVYN CARSON BRUDER

## ENDNOTES

[1]    These facts appear in an Affidavit for Arrest Warrant or Capias, CR 6, and in the Pre/Post Sentence Investigation Report.  CR 5

[2]    *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

[3]    Mr. Sieloff has recently requested that the documents supporting these allegations of fact, commonly referred to as "pass slips," be made a part of the record of this case either by judicial notice, as provided in TEX.R.EVID. 201 or by supplementation of the record in this case, as permitted by Tex.R.App.P. 34.5(c).

Additionally, Mr. Sieloff testified that he was aware of the "issues relating to the stop of [his] vehicle [and the] suppression of the blood draw in [this] case" but that did not want to have a hearing on the motion to suppress.  RR 9.

[4]     State's Response Brief, *Sieloff v. State*, No. 05-14-01300-CR (Tex.App. – Dallas filed March 2, 2015, 10-17 (hereafter "State's Response Brief").

[5]     *Id*. at 17-20.

[6]     *Id*. at 20-23.

[7]     556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). We suggest to the Court that the State's citation to *Puckett* as appearing in volume 566 of the United States Reports is erroneous.

[8]     FED.R.CRIM.P. 52(b). "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

[9]     In its brief the State relies on cases supporting the proposition that "[w]hen an appellant has denied the trial court **any** opportunity to rule on the complaint advanced later on appeal by having filed to advance that complaint below, nothing exists to the appellate court to review relative to that complaint because there is no ruling from the trial court to assess." State's Response Brief 12 (emphasis added). That argument fails to take into account the assertion of an issue in a timely-filed motion for new trial which indeed affords the trial court with an opportunity to review the complaint and furnishes the appellate court a basis on which to review the trial court's action, *viz.*, overruling the motion for new trial.

[10]    The harm analysis applicable in this case is the one set out in TEX.R.APP.P. 44.2(a) - "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See Holmes v. State*, *supra*, 323 S.W.3d at 173-74, and *Brecheisen v. State*, *supra*, 4 S.W.3d at 764-65 (error is not harmless if it contributes the defendant's conviction or punishment).

[11]    The State inexplicably includes in its brief the statement that Alex Zocchi, who represented State at Mr. Sieloff's trial, "passed away in October 2012," State's Response Brief 2 n.2 - a fact not contained in the record in this case. In order to avoid any inference by the State that Mr. Sieloff was somehow "sandbagging" either the trial court or the State by raising the *Santobello* issue, it should be noted that the motion for new trial was filed on 23 May 2012, CR 58, almost five months before Mr. Zocchi's death on 20 October 2012. By the time of Mr. Zocchi's death no affidavit had been executed by Mr. Zocchi and filed in this case contravening the allegations made in the motion for new trial, and the motion for new trial had already been overruled. That Mr. Zocchi is not

available to testify in the event this Court reverses Mr. Sieloff's conviction and sentence is not properly before the Court, nor would his absence be relevant upon a remand given that neither of the alternatives under *Santobello* - specific performance or withdrawal of the plea - contemplate or require the presence of the prosecutor who represented the State at trial.

[12] *See* RR 12, 20.

[13] "A rose is a rose is a rose." GERTRUDE STEIN, GEOGRAPHY AND PLAYS 186 (Four Seas 1922).

[14] *See* pp. 5-6, *supra*.

[15] The State has elected to limit its discussion of harm to the sentence imposed on Mr. Sieloff, arguing that because there is nothing in the record to show that the trial court's decision to impose a ten-year sentence was based on what the prosecutor said no harm is shown. State's Response Brief 21-23. No such showing of harm is required under *Santobello* because the question of whether the trial court was influenced by the prosecutor's recommendation is irrelevant. "The sentencing judge . . . stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will best be served by remanding the case . . . for further consideration." *Santobello*, *supra*, 404 U.S. at 262-63. *See also Bass v. State*, *supra*, where the court observed that the question "is not what the judge did . . . but what went on between the prosecutor and the appellant." *Bass v. State*, *supra*, 576 S.W.2d at 401.

[16] *Cole v. State*, Nos. 03-04-00067-68, 2004 Tex.App., LEXIS 11218, at *7-8 (Tex.App. – Austin December 16, 2004, no pet.)(not designated for publication), on which the State relies, is inapposite. *Cole* did not involve *Santobello* error. As explained in *Cole*, "no plea bargain existed." Therefore, because no *Santobello* issue was presented the appropriate harm analysis was that provided by Rule 44.2(b).

[17] As previously discussed, Mr. Sieloff was arrested without a warrant and then taken to a hospital where a blood was drawn from him without a warrant having been obtained. *See* note 1, *supra*. Mr. Sieloff initially sought to suppress his arrest and the seizure of his blood, but gave up those efforts in exchange for the prosecutor's promise not to oppose Mr. Sieloff's request for community supervision and SAFP. *See* note 3, *supra*. At his trial he reiterated his surrender of those rights. *Id*.